UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE:
WILLIAM S. KOLOGY AND
LINDA W. KOLOGY,                                    Chapter 13
        DEBTORS.                                    Case No. 12-14992-WCH

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

The matter before the Court is the Order to Show Cause dated September 27, 2013, directing William S. Kology and Linda W. Kology (the "Debtors") to show cause why the Court should not abstain from this case until such time as the litigation with respect to the extent of the Debtors' ownership of certain real property in Harwich, Massachusetts now pending in the Massachusetts Land Court (the "Title Litigation") is finally resolved.  On October 9, 2013, the Debtors filed the "Debtors' Response to Order to Show Cause" (the "Response"), arguing that abstention is inappropriate because the Title Litigation does not interfere with the Debtors' bankruptcy.  Creditor Todd H. Perry ("Perry") filed the "Reply of Todd H. Perry to Debtors' Response to Order to Show Cause" (the "Reply") on October 17, 2013, also supporting the continuation of this case.  For the reasons set forth below, I will suspend the above-captioned case until such time as the Title Litigation has been finally resolved.

**II. BACKGROUND**

The facts pertaining to the Order to Show Cause are not in dispute.  The Debtors acquired an interest in certain real property located at 57 Round Cove Road in Harwich, Massachusetts by two deeds in 1969 and 1970, respectively (the "Deeds").  At the time, they believed they had

1

acquired approximately 15 acres extending off Round Cove Road (the "Property"). In reality, the Deeds only granted the Debtors a twenty-five percent interest in a portion of the Property.[1] The title defect was not discovered until the 1980s, and the Debtors have since become embroiled in the Title Litigation with the purported holder of the remaining seventy-five percent interest in the Property in an attempt to obtain clear title. The Title Litigation remains pending in the Land Court.

The Debtors reside on a subdivided parcel of the Property directly off Round Cove Road known as Lot 4. They subdivided the Property several times with the intention of constructing a cul-de-sac off Round Cove Road and selling off the back acreage as separate buildable lots. The validity of some of these subdivisions has also been challenged in the Title Litigation.

Lot 4 is subject to three mortgages. The first secures an obligation to PNC Bank, N.A. in the amount of $136,076.22. The second secures an obligation to South Eastern Economic Development Corp. ("SEED") in the amount of $29,026.05. The third secures an obligation to Commonwealth Utility Employees Credit Union (the "Credit Union") in the amount of $41,829.60. In sum, these encumbrances total $206,931.87.[2] The remainder of the Property exclusive of Lot 4, sometimes referred to as the "back land," is heavily encumbered by tax and judicial liens.

The Debtors filed a Chapter 13 petition on June 28, 2012. The Court takes judicial notice of the fact that on June 11, 2012, seventeen days before the filing of their petition, the Debtors

---

[1] It appears that the southernmost portion of the Property was not conveyed to the Debtors by either Deed.

[2] Lot 4 was also subject to a judicial lien held by Todd Perry, but the Debtors successfully avoided it pursuant to 11 U.S.C. § 522(f).

2

filed a Suggestion of Bankruptcy in the Land Court on the eve of trial.[3] On "Schedule A - Real Property" ("Schedule A"), the Debtors listed their twenty-five percent record fee simple interest in the Property derived from the two deeds with a value of $67,500.00. Additionally, they listed an equitable claim to the remaining seventy-five percent interest in the Property by adverse possession with a value of $317,500.00.

On August 28, 2012, the Debtors filed their First Amended Chapter 13 Plan (the "Plan") wherein they proposed, *inter alia*, to strip off the second and third mortgages pursuant to 11 U.S.C. §§ 506(a) and 1322(b)(2) as being wholly unsecured. This proposed strip off is premised on their belief that, given the cloud on title and the fact that they hold only a twenty-five percent *record* interest in the Property, the value of their interest in the Property as a whole is worth no more than $67,500.00. Despite the fact that the Debtors claim the remaining seventy-five percent interest in the Property, they ascribe no value to it for purposes of plan confirmation. Perry has objected to confirmation on this basis and his objection remains outstanding.[4]

Consistent with their Plan, the Debtors filed an objection to SEED's secured proof of claim on April 10, 2013, arguing that it should be re-characterized as unsecured (the "Objection to Claim"). On May 8, 2013, SEED filed a response to the Debtors' objection, echoing Perry's arguments as to value, noting that the Debtors' positions before the Bankruptcy Court and the Land Court are inconsistent, and asserting that any modification of its claim is premature until the Title Litigation is resolved. On September 20, 2013, the Debtors filed a supplemental

---

[3] The Court may take judicial notice of matters of public record, Fed. R. Evid. 201(b)(2), and may do so on its own, Fed. R. Evid. 201(c)(1), without prior notice to the parties. Fed. R. Evid. 201(e). *See Kology v. Cuddy*, 06 Misc. 336169 (Mass. Land Ct.).

[4] I previously sustained the Perry's objection to confirmation on other grounds in my prior decision on the extent of the Debtors' homestead exemption, but consolidated the valuation issues with the determination of Debtor's objection to SEED's claim. *See In re Kology*, 499 B.R. 20, 42 (Bankr. D. Mass. 2013).

memorandum in support of their valuation, arguing that regardless of the merits of their adverse possession claim, they currently hold only a twenty-five percent interest in the Property. Additionally, they assert that the marketability of the Property has been impaired by the cloud on title.

After an initial hearing on the Objection to Claim, I scheduled an evidentiary hearing to determine the value of Lot 4 for September 26, 2013. On September 25, 2013, the Debtors and SEED filed a stipulation agreeing that the value of Lot 4 in the absence of any title defect is $245,000.00 and requested that I cancel the evidentiary hearing. Nevertheless, the Debtors continue to dispute that this hypothetical fair market value is an appropriate valuation under the circumstances and instead urge me to accept that the value of their interest is only $67,500.00. In the absence of a factual dispute, I cancelled the evidentiary hearing and took the matter under advisement.

Upon review of the Objection to Claim and response thereto, it appeared that consideration of this matter might be premature without a final determination by the Land Court as to the ownership interests of both Lot 4 and the Property. Therefore, I entered the Order to Show Cause on September 27, 2013. The Debtors timely filed a response on October 9, 2013, and Perry filed the Reply on October 17, 2013. Notwithstanding an express invitation to do so, the Chapter 13 trustee did not file a reply to the Response. Surprisingly, neither did SEED.

### III. POSITIONS OF THE PARTIES

A. The Debtors

The Debtors assert that I should not abstain because the best interests of the Debtors and their creditors are better served by the bankruptcy court retaining jurisdiction. Indeed, they argue that "where the bankruptcy proceeding provides a remedy for the creditors or debtors which is

4

not available in the non-bankruptcy forum, abstention is inappropriate, and in fact, an 'abdication of the Court's responsibility.'"[5] Here, the Debtors contend they have already been granted a remedy not available in the Land Court—the avoidance of Perry's lien on Lot 4—and still seek the most important remedy the bankruptcy court can grant—a discharge of their debts.

To this end, the Debtors assert that they are now in a position to propose a further amended plan through which they will surrender the "back land"—their interest in the Property exclusive of Lot 4—to the secured creditors and "thereby receive a valuable discharge from all of their unsecured creditors[] and most of their secured creditors."[6] They further posit that "[o]ther remedies may also be available," and may be included in their plan.[7] As such, the Debtors argue that abstention would deprive them of such relief.

The Debtors state that the Title Litigation neither duplicates nor works at cross-purposes with their bankruptcy. Noting that the Title Litigation concerns the merits of their adverse possession claim and the validity of two subdivisions, the Debtors explain that

> [t]hese issues undoubtedly cast a shadow on the bankruptcy proceeding since the outcome in the Land Court will affect the nature and value of the debtors' interest in the land, and the alienability. But [the Title Litigation] does not seek to administer the property for the benefit of creditors or allocate rights among creditors to the property. In fact, most of the creditors are not parties to the Land Court action.[8]

Accordingly, the Debtors conclude that "[t]here are no identical issues in the Land Court" and that "the status of SEED's claim as secured or unsecured will be determined by application of

---

[5] Response, Docket No. 221 at 2 (*quoting In re B.D. Int'l Discount Corp.*, 13 B.R. 635, 640 (Bankr. S.D.N.Y. 1981)).

[6] *Id.* at 3.

[7] *Id.*

[8] *Id.*

5

[11 U.S.C.] § 506(a)(1), not by any ruling of the Land Court."[9] Indeed, they assert that they "own only 25% of the land in question" and characterize "their interest in the remainder [a]s nothing more than a claim."[10]

Finally, the Debtors assert that suspension of this case would, in fact, damage the estate because the termination of the automatic stay would compel creditors to resume litigation in an effort to maximize their respective recoveries. In the Response, they explain:

> The stay insures that the debtor's affairs will be centralized in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another.
>
> This concept is especially important in a case such as this where the value of the collateral is so badly impaired by the title cloud. The bankruptcy code gives the tools to the bankruptcy court to resolve the creditors' claims in light of the value determined under [11 U.S.C.] § 506.[11]

In closing, the Debtors state their "plan to seek relief from the automatic stay when they have secured the relief of a confirmed plan and settlement with the creditors and alleged joint land owner," but insist that they be afforded the "'breathing room' to do so at a fair pace."[12]

B. Perry

In the Reply, Perry states that it is "unclear what the Debtors' proposal to surrender the 'backland' means."[13] To the extent that the Debtors propose a sale of their interest in the back land to satisfy his claim and supplement the distribution to unsecured creditors, Perry agrees that

---

[9] *Id.*

[10] Debtors' Supplemental Memorandum in Support of Objection to Claim of Southeastern Economic Development Corp. In light of Court's Appraisal Order (the "Debtors' Supplemental Brief"), Docket No. 204 at 3.

[11] Response, Docket No. 221 at 4.

[12] *Id.*

[13] Reply, Docket No. 222 at ¶ 1.

6

there is no impediment to a confirmable plan and that abstention is unnecessary.[14] If, on the other hand, the Debtors propose to retain their interest in the back land, Perry argues that a determination of the title and status of the Property by the Land Court is absolutely necessary for valuing the back land and ensuring compliance with the best interest of creditors test. In sum, Perry "sees no harm" in this Court retaining jurisdiction so long as the Debtors' amended plan "protects Perry's secured position."[15]

### C. SEED

Although SEED did not reply to the Response or Order to Show Cause, it argued in favor of abstention in its submissions with respect to the Objection to Claim. Indeed, SEED asserts that, to the extent that I do not impute one hundred percent of the value of Lot 4 to the Debtors, resolution of the Objection to Claim and proposed strip off are premature until the Land Court determines the ownership of the Property and a fair valuation can be reached. SEED contends that the Debtors have adopted inconsistent positions by seeking to strip off the second mortgage premised on only a twenty-five percent interest, while they simultaneously claiming the remaining seventy-five percent by adverse possession. Put simply, SEED states, "[t]he Debtors . . . cannot claim ownership interest[s] both ways depending on what benefits them most in the pending court action."[16] In light of the difference between these positions, SEED argues that the value of Lot 4 materially affects the nature of SEED's claim such that it would be irreparably

---

[14] Although Perry notes that, to his knowledge, his lien is the only surviving lien on the back land, I expressly denied the Debtors' motions to avoid the judicial liens encumbering the back land because their homestead exemption was confined to Lot 4. *See In re Kology*, 499 B.R. at 40.

[15] *Id.* at ¶ 3.

[16] South Eastern Economic Development Corporation's Response to Debtors' Objection to Claim No. 12 (the "SEED Response"), Docket Doc. 181 at ¶ 10.

7

harmed by an assumption that the Debtors hold only a twenty-five percent interest in Lot 4 if they later succeed in the Title Litigation.

## IV. DISCUSSION

Section 305(a)(1) of the Bankruptcy Code provides in relevant part:

> The court, after notice and a hearing, may dismiss a case . . . or may suspend all proceedings in a case under this title, at any time if . . . the interests of creditors and the debtor would be better served by such dismissal or suspension . . . .[17]

"The case law concerning suspension of a bankruptcy case pursuant to [11 U.S.C.] § 305(a)(1) is sparse, but there is no dispute that suspension is 'an extraordinary remedy that should be used sparingly . . . .'"[18] The test is whether both the Debtors and creditors would be "better served" by suspension than they would by the continuation of this case.[19]

Additionally, under 11 U.S.C. § 105(a), I have the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," or otherwise "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."[20] Courts have recognized that this provision may provide an alternate basis for abstention or suspension.[21] They reason that if 11 U.S.C. § 362 grants the bankruptcy court the power to lift the automatic stay to permit state court proceedings to go forward to resolve claims against the estate, and 11 U.S.C. § 105(a)

---

[17] 11 U.S.C. § 305(a)(1)

[18] *In re Schur Mgmt. Co., Ltd.*, 323 B.R. 123, 129 (Bankr. S.D.N.Y. 2005) (*quoting* L. King, et al., Collier on Bankruptcy at ¶ 305.02)

[19] *See Eastman v. Eastman (In re Eastman)*, 188 B.R. 621, 625 (B.A.P. 9th Cir. 1995); *In re Schur Mgmt. Co., Ltd.*, 323 B.R. at 129.

[20] 11 U.S.C. § 105(a).

[21] *See, e.g.*, *In re Duratech Indus., Inc.*, 241 B.R. 283, 287 (E.D.N.Y. 1999); *Western Cities Broadcasting, Inc. v. Schueller (In re Schueller)*, 126 B.R. 354, 359 (D. Colo. 1991).

empowers it to "enjoin state court proceedings which may have a detrimental effect on the administration of the estate," then "it follows that [the bankruptcy court] may defer a hearing on a plan until state court proceedings are resolved."[22]

The question before me is whether the Title Litigation presents an impediment to this proceeding such that the interests of all parties would be better served by a suspension of this case until such time as it is finally resolved. The Debtors have responded in the negative, arguing that the Title Litigation is all but irrelevant to this proceeding and that they can propose a confirmable plan today based upon the current value of their interest. Their response, however, is both pregnant and disingenuous as the Debtors concede that the Title Litigation "will affect both the *nature* and *value* of the [their] interest" in the Property.[23]

In seeking to strip off the second and third mortgages, the Debtors insist that they hold only a twenty-five percent interest in the Property, but this ignores their equitable claim to the remainder which will be decided by the Title Litigation. They myopically state that their equitable claim is just a claim, as if that were self-evidently dispositive, but this is an irrelevant truism, as all legal and equitable interests, including contingent ones, held by the debtors are nonetheless property of the estate.[24] Notably, the Debtors acknowledge this by listing the

---

[22] *See, e.g.*, *In re Schueller*, 126 B.R. at 359.

[23] Response, Docket No. 221 at 3 (emphasis added).

[24] Section 541(a)(1) of the Bankruptcy Code provides:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>     (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a)(1). Moreover, in a Chapter 13 case, property of the estate also includes

> all property of the kind specified in [11 U.S.C. § 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

equitable claim on Schedule A and by stating the Title Litigation "will affect the *nature*" of their interest in the Property.[25]  In sum, any Chapter 13 plan must take into account that the Debtors do, by their own admission, hold more than a twenty-five percent interest in Lot 4.[26]

The Debtors urge that the issue before me is simply one of value, and that 11 U.S.C. § 506(a) dictates a clear result given the "badly impaired" value of the Property.[27] Thus, they start with the hypothetical value of $245,000.00 for Lot 4 and discount it in light of: (1) their twenty-five percent record interest; (2) the lack of marketability of a fractional interest; and (3) the cloud on title produced by the Title Litigation.  All this, however, merely begs the question, what is the nature of the interest being valued?  Not only do the Debtors ascribe no value to their equitable claim, they assert its very existence, as advanced through the Title Litigation, impairs the value of Lot 4.  In effect, the Debtors are double discounting the value of their interest.

Put simply, the Title Litigation affects what the Debtors have and what it is worth.  The fact that they concede that point, yet simultaneously oppose abstention in favor obtaining relief in the bankruptcy court would be inexplicable but for the closing statement of the Response:

> Debtors furthermore plan to seek relief from the automatic stay *when they have secured the relief of a confirmed plan* and settlement with the creditors and alleged joint land owner, but the factors enumerated above favor them having the "breathing room" to do so at a fair pace.[28]

---

11 U.S.C. § 1306(a)(1).

[25] Response, Docket No. 221 at 3 (emphasis added).

[26] It is also notable that the Debtors listed their equitable claim on Schedule A as an interest in real property, rather than on "Schedule B – Personal Property."

[27] *Id.* at 4.

[28] *Id.*

10

Notwithstanding the fact that 11 U.S.C. § 362(a) does not operate as a stay with respect to a civil action commenced and prosecuted by the Debtors, their clear intent is to utilize 11 U.S.C. § 506(a) to strip off the second and third mortgages on Lot 4 as wholly unsecured based on their inconsistent claim of fractional ownership before seeking to establish their claim to complete ownership through the Title Litigation.[29] In other words, the Debtors are attempting to use the uncertainty of the Title Litigation as a sword against their rightful creditors to free Lot 4 from encumbrances in advance of the possibility that the Land Court rules that they hold one hundred percent of the interest in Lot 4. This strategy raises serious questions concerning bad faith and the earnestness of their intent in filing their petition, let alone in proposing the Plan.

That all said, it is important to remember that it is hardly a forgone conclusion that the Debtors will prevail in the Title Litigation. Moreover, any attempt to value the equitable claim before a final judgment could result in a substantial windfall to SEED and the Credit Union if the Debtors lose the Title Litigation, just as the Debtors' strategy could grant them an unjustified windfall at the expense of SEED and the Credit Union if they were to win. I will not capriciously opine as to which party will prevail in a pending cause of action that must be decided on the merits, particularly where the plaintiffs in that action paradoxically ask that I assume that they will lose. Ultimately, until the Land Court determines whether the Debtors' equitable claim will bloom into a full legal interest, confirmation of a Chapter 13 plan is likely impossible.

Therefore, in order to avoid irreparable harm to either the Debtors or their creditors, I find that, pursuant to 11 U.S.C. § 305(a)(1), suspension of this case until such time as the Title Litigation yields a final, non-appealable judgment is appropriate. Alternatively, given my

---

[29] *See* 11 U.S.C. § 362(a).

observations regarding the Plan and the Debtors' strategy, I would similarly suspend the case under 11 U.S.C. § 105(a) to prevent an abuse of the bankruptcy process. To the extent necessary, I will also modify the automatic stay to facilitate the continuation of the Title Litigation.

## V. CONCLUSION

In light of the foregoing, I will enter order suspending this case until such time as the Title Litigation yields a final, non-appealable judgment and modifying the automatic stay to the extent necessary to permit the continuation of the Title Litigation.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: December 5, 2013

Counsel Appearing:

    Michael J. Tremblay, Law Office of Michael J. Tremblay, Marlborough, MA,
        for the Debtors
    J. Alexander Watt, Law Office of J. Alexander Watt, Barnstable, MA,
        for Perry
    Jane M. Pineau, Lisa M. Holland, Jane M. Pineau Attorney at Law, New Bedford, MA,
        for SEED